United States Bankruptcy Court
District of Massachusetts

_____
                                    )
    In re:                          )
                                    )
    WILLIAM E. GRAY &               )          Chapter 7
    KATHERINE M. GRAY,              )          Case No. 07-41672-HJB
                                    )
          Debtors.                  )
                                    )
_____)

**MEMORANDUM OF DECISION**

Before the Court is the "Trustee's Objection to Claim of Exemption" (the "Objection") filed by Janice G. Marsh, the Chapter 7 Trustee (the "Trustee"). The Trustee objects to the debtors' claim of a homestead exemption under Massachusetts General Laws ch. 188 (the "Massachusetts Homestead Statute," "Massachusetts Homestead Exemption" or "MGL ch. 188") in their mobile home ("manufactured home").[1] The issue to be determined is whether the owner of a manufactured home, who leases the land upon which the manufactured home rests, may claim an exemption under § 1 of the Massachusetts Homestead Statute.

**I.    FACTS AND TRAVEL OF THE CASE**

There is no material factual dispute. In 1999, William and Katherine Gray (together, the "Debtors") purchased a 1999 Tital 028 manufactured home and have thereafter

---

[1] In 1991, the Massachusetts legislature substituted the term "manufactured home" in place of "mobile home" throughout the Massachusetts General Laws. 1991 Mass. Legis. Serv. 481 (West). "Mobile home" will be used in reference to the 1990 Act which added the mobile home exemption to § 1A. 1990 Mass. Legis. Serv. 492 (West).

1

occupied the manufactured home as their principal residence. The Debtors lease the land upon which the manufactured home rests. On July 14, 2006, William Gray recorded a Declaration of Homestead in the manufactured home, pursuant to MGL ch. 188, § 1. An alternative declaration was made under Massachusetts General Laws ch. 188, § 1A ("MGL ch. 188, § 1A") if the declaration under § 1 was deemed to be invalid.[2] William and Katherine Gray are 51 and 46 years of age, respectively, and neither is considered "disabled" under the Massachusetts Homestead Statute.[3]

On May 3, 2007, the Debtors filed for protection under Chapter 7 of the Bankruptcy Code.[4] In their bankruptcy schedules, the Debtors disclosed their interest in the manufactured home, listing its current value as $45,000.00, subject to a secured claim of $7,000.00. The Debtors also claimed an exemption in the manufactured home in the amount of $125,000.00 under § 1 of the Massachusetts Homestead Statute.[5] The Chapter

---

[2] Section 1A of the Massachusetts Homestead Statute states in pertinent part:

> The real property or manufactured home of persons sixty-two years of age or older, regardless of marital status, or of a disabled person, as herein defined, shall be protected against attachment, seizure or execution of judgment to the extent of $500,000;...

Mass. Gen. Laws ch. 188, § 1A.

[3] Under § 1A, a "disabled person" is defined as follows:

> an individual who has medically determinable permanent physical or mental impairment which would meet the disability requirements for supplemental security income under the provisions of 42 USC §1382c(a)(3)(A) and (c), which are in effect at the time of filing.

Mass. Gen. Laws ch. 188 § 1A.

[4] See 11 U.S.C. §§ 101, et seq (the "Bankruptcy Code" or the "Code").

[5] Under the Bankruptcy Code, a debtor may exempt a limited amount of property from the bankruptcy estate. 11 U.S.C. § 522(b). Massachusetts has not opted-out of the exemptions under

7 Trustee objects to the claimed exemption.

**II.     POSITIONS OF THE PARTIES**

In support of her objection to the homestead exemption claimed by the Debtors, the Chapter 7 Trustee relies heavily on the case of In re Kelly, 334 B.R. 772 (Bankr. D. Mass. 2005). There, the court held that § 1 of the Massachusetts Homestead Statute does not include manufactured homes within its zone of protection. The Trustee agrees with the reasoning of Kelly, and maintains that this Court should follow the plain language of § 1 of the Massachusetts Homestead Statute which is, in her view, silent with respect to the inclusion of manufactured homes. Contrasting § 1 with § 1A of the statute, the Trustee maintains that the latter expressly provides for an exemption for manufactured homes owned by elderly or disabled individuals, while the former does not specifically mention manufactured homes – and concludes that the legislature simply did not intend to include an exemption for manufactured homes owned by those not elderly or disabled.

The Debtors obviously disagree with the Trustee. They contend that § 1 of the Massachusetts Homestead Statute includes manufactured homes, albeit in a way different from that in § 1A. The Debtors posit that, instead of explicitly mentioning the words "manufactured home" as was done in § 1A, the statutory language in § 1, to wit, "*owner or owners of a home or one or all who rightfully possess the premises by lease or otherwise* and who occupy or intend to occupy said home as a principal residence," covers the same

---

§ 522(d) of the Code, thus allowing Massachusetts debtors to choose between either the §522(d) exemptions or those available under state and non-bankruptcy federal law. The Debtors have elected the latter.

3

territory. Mass. Gen. Laws. ch. 188, § 1 (emphasis added). The Debtors further remind this Court that the Supreme Judicial Court of Massachusetts (the "SJC") has instructed that the Massachusetts Homestead Statute is to be interpreted with generosity toward the protection of homeowners. Dwyer v. Cempellin, 424 Mass. 26, 29-30, 673 N.E.2d. 863, 866 (1996). They reject the notion that the Massachusetts legislature intended to exclude manufactured homes from § 1 of the statute.

### III.    DISCUSSION

Absent a timely objection, a claim of exemption is prima facie valid. McNeilly v. Geremia, 249 B.R. 576, 579 (B.A.P. 1st Cir. 2000). As the objecting party, the Trustee bears the burden of demonstrating that the Debtors' claimed exemption in the manufactured home should be disallowed. Fed. R. Bankr. P. 4003(c). Because the exemption arises under state law, the Court

> must rule as it believes the highest court of the state would rule. When the highest court has not addressed the issue, the Bankruptcy Court should not regard lower court rulings on the issue as dispositive. Rather, it should attempt to predict what the highest court would do and to that end should accord proper regard to decisions of other courts of the state.

In re Miller, 113 B.R. 98, 101 (Bankr. D. Mass. 1990). Though addressed in In re Kelly[6], the issue *sub judice* - namely, whether § 1 of the Massachusetts Homestead Statute includes an exemption in manufactured homes - has not yet been squarely decided by the

---

[6] See also In re Wenners, No. 05-48172 (Bankr. D. Mass. Jan. 12, 2006) (adopting the analysis of In re Kelly).

4

SJC.[7]

"[A]n estate of homestead 'is a provision by the humanity of the law for a residence for the owner and his family', free from attachment or levy on execution by creditors up to the amount allowed by law." Ladd v. Swanson, 24 Mass. App. Ct. 644, 646, 511 N.E.2d 1112, 1113 (1987) (quoting Bates v. Bates, 97 Mass. 392, 395 (1867)). Homestead laws are "designed to benefit the homestead declarant and his or her family by protecting the family residence from the claim of creditors." In re Hildebrandt, 320 B.R. 40, 44 (B.A.P. 1st Cir. 2005) (citing Dwyer, 424 Mass. at 29-30, 673 N.E.2d at 866).

As stated by the SJC in Dwyer, "[p]ublic policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home." 424 Mass. at 29, 673 N.E.2d at 866; see also In re Edwards, 281 B.R. 439, 446 (Bankr. D. Mass. 2002) (holding that if doubt exists as to the interpretation of the homestead statute, then such doubt is to be resolved in the debtor's favor). The liberal interpretation of the Massachusetts Homestead Statute flows from the public policy behind the statute.

> Homestead laws are based on public policy that favors preservation of the family home regardless of the householder's financial condition. Furthermore, homestead laws tend to prevent debtors and their families from becoming public charges. In light of the public policy and the purpose of the statutes, this court has construed the State homestead exemptions liberally in favor of debtors. This authority is in keeping with authority in other jurisdictions.

Shamban v. Masidlover, 429 Mass. 50, 53, 705 N.E.2d 1136, 1138 (1999) (citations omitted).

---

[7] The issue has, however, been raised in *dicta*. See Thurston v. Maddocks, 88 Mass. (6 Allen) 427, 428 (1863), further discussed *infra*.

5

However, liberal construction does not mean that courts can extend the protection of the homestead exemptions when doing so would contradict the "plain and unambiguous" language of the statute. In re Hildebrandt, 320 B.R. at 44 (citing In re Garran, 338 F.3d 1, 6 (1st Cir. 2003) (citing Masidlover, 429 Mass. at 53-54, 705 N.E.2d at 1139)). "Where statutory language is clear, the courts must impart to the language its plain and ordinary meaning." Com. v. One 1987 Mercury Cougar Automobile, 413 Mass. 534, 537, 600 N.E.2d 571, 573 (1992) (citing Nationwide Mut. Ins. Co. v. Comm'r of Ins., 397 Mass. 416, 420, 491 N.E.2d 1061 (1986)). The Massachusetts Homestead Statute is no exception to that rule.

But a "plain meaning" analysis of the Massachusetts Homestead Statute is no "walk in the park." The wording is, in parts, awkward and seemingly hyper-technical; indeed, the statute has repeatedly been criticized for its lack of clarity.[8] Fortunately, however, courts have the benefit of the fundamental and well-settled purpose of the statute provided by the SJC as well as its admonition that an approach which preserves the home for the benefit of the family is the best guide to discover the legislative intention.

The beginning point is, as always, with the words of the statute. Section 1 states in pertinent part,

> An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and

---

[8] See In re Kelly, 334 B.R. at 774 (referring to the first subsection of § 1 as "clumsy" due to the use of "land and buildings", "home" and "premises" all in one sentence); In re Cempellin, 175 B.R. 1, 1 (Bankr. D. Mass. 1994) (stating the statute is "not a model of clarity" and emphasizing the internal inconsistencies of the statute with the words "owner or owners" coupled with a singular reference to "only one owner" later in the statute; and In re Szwyd, No. 05-50837 (Bankr. D. Mass. Aug. 7, 2006) (emphasizing the complexity and counterintuitive nature of the statute which may make the statute difficult to navigate for those without legal training and resources).

who occupy or intend to occupy said home as a principal residence.
Mass. Gen. Laws ch. 188, § 1.

The Kelly court thought that the best approach to discover meaning in those words was to parse the statutory provision. It thoughtfully argued that the statute should be interpreted as follows: the first part of the statute refers to the amount of the exemption ($500,000); the second part is the object of the homestead ("land and buildings"); the third part refers to the claimant of the homestead ("owner or owners of a home or all who rightfully possess the premises by lease or otherwise"); and the last section refers to the requirement of occupation ("occupies or intends to occupy as principal residence"). In re Kelly, 334 B.R. at 774. Based on that reading, the court held that land *and* buildings were the objects of the homestead and, therefore, manufactured homes - where the building but not the land was owned by the debtor - was not included. Id. at 775. The court further held that the word "home" did not refer to the object of the exemption. Rather, ownership of a home was a necessary qualifier of those who could exempt the "land and buildings". Id. Thus, ownership of a manufactured "home" did not alone provide the right to claim a homestead exemption.

This Court views the statute at issue in a slightly different way. One can read the statute's words "land and buildings" without viewing those terms as limiting the homestead exemption to a parcel where the declarant owns *both* the land and the buildings. Indeed, this Court can find no other way to properly account for the specifically mentioned extension of the exemption for the homestead declarant who possesses the property "by lease." This was the view adopted by the SJC, albeit in *dicta*, long ago.

The object of this clause in St. 1855, c. 238, obviously was to create a

7

> homestead right in a *house* owned by the occupant, but standing on leased land; so that the house should be exempted from attachment though it was subject to removal, and though there was no homestead right in the land.

Thurston v. Maddocks, 88 Mass. (6 Allen) 427, 428 (1863) (emphasis added). Maddocks has never been overturned by the SJC. And, more recently, the court in In re Carey explained, "the homestead statute extends the estate of homestead to the whole of the lands and buildings that constitute the owners "home," limited only by the dollar value of the exemption." In re Carey, 282 B.R. 118, 119 (Bankr. D. Mass. 2002).

The Trustee further posits that within the context of the statute, the word "premise" does not permit the inclusion of manufactured homes, because the definition of "premises" is "a tract of land with buildings thereon." Merriam-Webster Collegiate Dictionary 980 (11th ed. 2005). However, the interpretation of words "must be construed in association with the general statutory plan." Comm'r of Revenue v. Wells Yachts South, Inc., 406 Mass. 661, 664, 549 N.E.2d 1131, 1134 (1990) (citing Polaroid Corp. v. Comm'r of Revenue, 393 Mass. 490, 497, 472 N.E.2d 259 (1984)). The word "premise" is specifically used in the statute in the context of describing the extension of the exemption to leased land - where the homestead declarant would not, by definition, own the real property.

Finally, the Trustee argues that well-recognized rules of statutory construction require this Court to find that the inclusion of manufactured homes in § 1A and their omission in § 1 of the Homestead Exemption Statute compels the interpretation urged by the Trustee.

When interpreting statutes, a court must look "to the particular statutory language at issue, as well as the language and design of the statute as a whole."  Sullivan v.

Everhart, 494 U.S. 83, 89 (1990) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988)).  The Massachusetts SJC has held that,

> statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, prior legislation…[G]eneral expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense.

Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 163 n.11, 691 N.E.2d 935, 941 (1998) (citations omitted).  This Court is aware that the SJC has also held that in situations where the legislature has deliberately used language in one portion of a statute but not in others addressing the same issue, the language may not be implied or assumed to exist where it is not written.  First Nat'l Bank v. Judge Baker Guidance Ctr., 13 Mass.App.Ct. 144, 153, 431 N.E.2d 243, 249 (1982); see also Doe v. Superintendent of Schools of Worcester, 421 Mass. 117, 128, 653 N.E.2d 1088, 1095 (1995) ("[I]f the legislature intentionally omits language from a statute, then no court can supply it.").  However, the SJC also wrote in Champigny v. Commonwealth,

> We [the Court] construe a statute in accord with "the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished to the end that the purpose of its framers may be effectuated."

422 Mass. 249, 251, 661 N.E.2d 931, 932 (1996) (citing Telesetsky v. Wight, 395 Mass. 868, 872-873, 482 N.E.2d 818 (1985) (quoting Commonwealth v. Galvin, 388 Mass. 326-328, 446 N.E.2d 391 (1983))).  And in Saccone v. State Ethics Comm'n., 395 Mass. 326, 334, 480 N.E.2d 13, 18 (1985) (quoting Holbrook v. Holbrook, 18 Mass. (1 Pick.) 248, 250 (1823)), the SJC wrote that if

9

>   the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act.

The Massachusetts legislature, in 1990, amended the Massachusetts Homestead Statute in § 1A to include a homestead exemption for mobile homes of the elderly or disabled, but made no similar change in § 1.  Since 1990, §§ 1 and 1A have been amended by the legislature four and five times, respectively.[9]  The Trustee contends that the legislature could have easily added a reference to § 1 to provide for a manufactured home exemption and the fact that the legislature did not do so is evidence that the legislature deliberately intended to exclude a manufactured home exemption in § 1. Yet, this assumes that the legislature was aware that the issue was in doubt.  <u>Maddocks</u> suggests otherwise.[10]

Furthermore, not only were §§ 1 and 1A not drafted at the same time, they do not use similar language in describing the property to be protected under the statute.  Section 1 refers to "land and buildings" and a "home."  Section 1A refers to "real property or manufactured home".  In Massachusetts, "real property" is "the soil of the earth and everything erected upon it or buried beneath it."  Mass. Prac., 14B § 17.1 (3d ed. 2007)

---

[9] Section 1 was amended by: 1992 Mass. Legis. Serv. 286 (West), 1995 Mass. Legis. Serv. 297 (West), 2000 Mass. Legis. Serv. 174 (West), and 2004 Mass. Legis. Serv. 218 (West).  Section 1A was amended by 1991 Mass. Legis. Serv. 481 (West), 1996 Mass. Legis. Serv. 450 (West), 2000 Mass. Legis. Serv. 174 (West), 2004 Mass. Legis. Serv. 218 (West), and 2006 Mass. Legis. Serv. 64 (West).  These amendments included the substitution of "manufactured home" for "mobile home" throughout the Mass. Gen. Laws.  1991 Mass. Legis. Serv. 481 (West).

[10] Furthermore, employing this rule of statutory instruction without the context supplied by the SJC would require this Court to infer that the Massachusetts legislature intended to exclude from protection the most vulnerable of its homeowners.  This Court declines to make that inference.  It would be inconsistent with the purpose of the statute as described by the SJC.  Rules of statutory construction are often helpful, but, in the end, they are just guideposts to legislative meaning.

10

(citing Drake v. Wells, 93 Mass. (11 Allen) 141, 143 (1865)).  Thus, "real property" on its own does not include manufactured homes that rest upon land not owned by the manufactured home owner.  Because the term "real property" would not have included manufactured homes, the legislature included a specific mention for manufactured homes.  This was not similarly required under § 1, however, as the inclusion of homes on leased property already provided for the inclusion of manufactured homes.[11]

"[I]f there are *any* doubts as to the interpretation of the law with respect to a determination of the extent of the homestead estate such doubts *must* be resolved in favor of the debtor... ."  In re Edwards, 281 B.R. at 446 (relying on Dwyer) (emphasis added).  Given the fact that § 1 of the Homestead Exemption Statute may be interpreted in more than one reasonable manner; there is a lack of statutory definition; the statute makes the exemption available to a leaseholder; and the highest court in the Commonwealth of Massachusetts counsels a liberal interpretation in favor of debtors, this Court concludes that manufactured homes are included within § 1 of the Homestead Exemption Statute.

---

[11] The Court takes note that many states have included specific statutory language for homestead exemptions in mobile or manufactured homes, often without requirement that the owner be elderly or disabled or that the manufactured or mobile home owner own the land upon which the home rests.  See Ala. Code § 6-10-2 (2007); Ariz. Rev. Stat. Ann. § 33-1101 (2007); Cal. Civ. Proc. Code § 704.710 (West 2007), Colo. Rev. Stat. § 38-41-201.5 & 201.6 (West 2007), Conn. Gen. Stat. Ann. § 52-352a (West 2007), Idaho Code Ann. § 55-1001 (2007), Mich. Comp. Laws Ann. § 600.5451 (West 2007), Mont. Code Ann. § 70-32-101 (2007), Nev. Rev. Stat. Ann. § 115.005 (West 2006), N.H. Rev. Stat. Ann. § 480:1 (2007), Ohio Rev. Code Ann. §323.151 (West 2007), S.D. Codified Laws § 43-31-1 & 2 (2007), Utah Code Ann. § 78-23-3 (West 2007), Wash. Rev. Code Ann. § 6.13.010 (West 2007), and Wyo. Stat. Ann. § 1-20-104 (2007).

**IV.    CONCLUSION**

Based on the foregoing, the "Trustee's Objection to Claim of Exemption" is OVERRULED. A separate Order in conformity with this Memorandum of Decision shall issue forthwith.

By the Court,

*[signature]*

DATED:    December 7, 2007

Henry J. Boroff
United States Bankruptcy Judge